MELANIE HILL
Nevada Bar No. 8796
LAW OFFICE OF MELANIE HILL
9345 W. Sunset Road, Suite 100
Las Vegas, Nevada 89148
Tel.: (702) 362-8500
Fax: (702) 362-8505
Melanie@MelanieHillLaw.com
Attorney for Defendant Tyricka Middleton

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

*****

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>TYRICKA MIDDLETON,<br><br>Defendant. | Case No: 2:11-cr-00340-PMP-CWH-2<br><br>**DEFENDANT TYRICKA MIDDLETON'S SENTENCING MEMORANDUM, EXHIBITS IN AID OF SENTENCING, AND NOTICE OF INTENT TO CALL WITNESSES TO DISCUSS THE DESTINY HOUSE TRANSITIONAL RESIDENCE** |

The defendant, Tyricka Middleton, by and through her appointed counsel Melanie Hill, hereby files this Sentencing Memorandum, Exhibits in Aid of Sentencing, and Notice of Intent to Call Witnesses to Discuss the Destiny House Transitional Residence for the Court's consideration in determining what type and length of sentence is "sufficient, but not greater than necessary," to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  This memorandum is based upon the following Memorandum of Points and Authorities, all the papers and pleadings on file herein, and the sentencing argument which will be made at the hearing currently scheduled for Monday, February 10, 2014 at 10:00 a.m.

/ / /

/ / /

/ / /

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION

**A. Tyricka's Background and Personal Growth**

Tyricka first came before the Court on September 16, 2011 a broken little girl, a victim herself of sex trafficking by her violent gorilla pimp and co-defendant Travone Franklin that was coerced through duress, physical and emotional abuse, and promises of love and a family of her own to engage in sexual acts with men for money she was required to turn over to her pimp, Tray Mack. Although she was forced to engage in these acts, Tyricka, takes full responsibility for her actions that led to her arrest in this case and has chosen to devote her life to helping other women who suffer every day at the hands of their pimps.  This drive to help others began to blossom while she was incarcerated pretrial at the Henderson Detention Center.

Tyricka embraced the opportunity to help others (mostly juveniles and teenagers) who found themselves facing criminal charges by volunteering each month in Henderson Municipal Court Judge Diana Hampton's Life of Crime Program one evening a month from August, 2012 through February, 2013.  Tyricka would stand up in front of the group (with four other inmates) and tell her childhood life story and how she found herself in jail with a concentration on encouraging them to stay out of trouble and explaining what life was like in jail and how she was going to use this opportunity as a wakeup call to get her life back on track.  Through this volunteer opportunity, Tyricka began to self-reflect on her life from the point of her arrest and how she was going to take her life into her own hands and make a change for the better.  Tyricka realized that she was no longer a child, and she had the power to take control of her life away from her former pimp and family and build a better future for herself in order to succeed.  Tyricka strives to take one day at a time to reach each small personal goal that she has set for herself over the last two years and five months since she was arrested.

/ / /

Law Office of Melanie Hill
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

Tyricka's personal growth continued throughout the pendency of this federal case while serving time awaiting trial on this case.  After her trial in February, 2013, the Court gave Tyricka the opportunity to start working towards her goals when she was released to the halfway house on March 13, 2013.  In order to receive the support she needed to heal from the trauma bonding she suffered from her former pimp, Tyricka sought out Hookers for Jesus ("HFJ") – an organization founded by Annie Lobert, a former prostitute and victim of sex trafficking to help women get out of prostitution.

HFJ's mission is as follows:

> **Our vision** includes promoting spiritual, emotional, and physical wellness in the lives of those who have been affected by sexual trauma and related forms of abuse in commercial sexual exploitation.
> **Our mission** focuses on helping children/teens/women escape and recover from the harmful effects of human sex trafficking and prostitution.
> **Our efforts** include loving and accepting everyone, REGARDLESS of their past or current lifestyle and encouraging them to achieve their FULL potential! There will be no judgment. It is our heart's desire that our friends that are working as sex workers would be released from their past and healed through a personal love relationship with God.
> **Our commitment** is going wherever God leads in order to bring freedom to those that are captive in ANY form of sex trafficking, whether it be in exotic dancing, pornography, or prostitution.

See HFJ website, available at http://www.hookersforjesus.net/contentpages/13469/97cc6c03-2743-4f46-a4cb-93d1aa8ce9b5/About.aspx.

Upon release to the halfway house, Tyricka immediately started attending church at Valley Bible Fellowship ("VBF") in March, 2013, and began to bond with other women that had been through circumstances similar to her.  Tyricka also started attending classes at VBF on Approval Addiction, Boundaries, and Safe People and learned so much about herself and her weaknesses through the study of these books.  These classes allowed Tyricka to continue to self-reflect and grow into the strong, confident woman that she now stands before the Court as at sentencing.  Tyricka continues to attend VBF and HFJ and continues to work on her personal growth and emotional, physical, and spiritual healing.

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

On May 24, 2013, Tyricka graduated from Jon's Ponder's ex-offender re-entry program, Hope for Prisoners.  Jon inspired Tyricka to not give up hope because he had once been in prison and lived in the same halfway house as Tyricka currently lives in after he was released from federal prison.  Tyricka learned from Jon that she should not let prison define her because she could still become a successful woman with drive and determination.  At Tyricka's graduation she was selected to read her Vivid Vision, which all of the participants wrote to describe themselves a year from the date of their graduation.  Tyricka wrote the following in her Vivid Vision:

> I am doing better than I've ever thought I could possibly do in life.  I am committed to God and helping young women that are living the life style I was once deep into.  I'm helping them to learn how to love themselves more than anyone else and to have confidence.  In addition, I am sharing with them all the things that I've been through in my rotten past and how I got to where I am today. . . .  For the past year I have been surrounding myself with positive and productive men and women and learning form them the tools I need to become the person I've been dying to be for so long.  My life in what I make it and I have changed ten fold.  I am thankful for that. . . .  I want to be an inspiration to people, especially young people who are growing up in poverty.  I've turned my mess into a message.  I give my upmost respect to all the people who have been supporting me, encouraging me, and helping to guide me to who I really am and where I want to be in my life.  I'm still searching for my true vocation and exploring all the beautiful things life has in store for me.

See Tyricka's Vivid Vision, Hope for Prisoner's Certificate of Completion, Senatorial Certificate of Achievement from U.S. Senator Dean Heller, Congressional Recognition from U.S. Congressman Joe Heck, Certificate of Recognition from Nevada Senator Tick Segerblom, and photos from Tyricka's graduation attached hereto as Exhibit 1.  Tyricka continues to keep in touch with Jon and her case manager at Hope for Prisoners, and they have assisted her in securing job interviews since her graduation.  The vision for Hope for Prisoners from their website is as follows:

> The Vision of HOPE for Prisoners is to empower and equip men, women, and young adults who are exiting various arenas of our judicial system to help them successfully reenter and effectively function in mainstream society.  Our holistic approach is to encourage and impart HOPE into the ex-offender as we come alongside them and their families in efforts to transform lives and systematically educate society in ways to engage and support them.

See Hope for Prisoner's website, available at http://www.hopeforprisoners.org/about-us/our-vision/.

/ / /

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

Tyricka's first personal goal was to attain her high school diploma and she studied every day for over two months to successfully pass her GED on October 23, 2013.  See GED certificate and official transcript of GED results, attached hereto as Exhibit 2.  Tyricka wants to continue her education and receive career counseling to determine the path she will take in her future and set goals to achieve her dreams.  Tyricka hopes to start school soon to start working on her career.  Tyricka's own words in her letter to her probation officer are instructive of this goal setting:

> My main focus is healing myself and going back to school. Ive (sic) recently took my G.e.d (sic) and I passed it. I had doubted myself but I passed. I don't know what career I want but I'll start by taking general classes and then see what interest me and what I believe I am good at.

See Tyricka written acceptance of responsibility statement, PSR ¶ 29.

Tyricka hopes to move into Destiny House, a safe house for adult victims of sex trafficking and prostitution, as part of her continued rehabilitation in lieu of additional jail time while on court supervision after sentencing.  Hookers for Jesus founder Annie Lobert explains the Destiny House program in her letter in support of Tyricka's release to Destiny House as follows:

> Destiny House is a safe transitional home for women who want a true change in their lives away from the sex trafficking and prostitution lifestyle.  Our unique residential home and faith based program is designed to address the whole person: spiritual, physical, and emotional.  Services include individualized programs, biblically-based counseling by qualified therapists, nutrition education, health and fitness instruction, life skills training, and educational career opportunities.  Under close supervision, Destiny House programs and continuum of services are designed as a bridge to healing, self-sufficiency, and permanent housing.

See Annie Lobert's letter in support of Tyricka, filed under seal as Exhibit 3.

Ms. Lobert will be made available to testify at the sentencing hearing regarding Destiny House if requested by the Court.  While at Destiny House, Tyricka will live under structure and rules with no cell phone or ability to leave without supervision of the house mom's or Destiny House staff in order to allow her to continue to heal and learn the life skills necessary to become a self-sufficient, contributing member of society.  See Destiny House Guest Expectations and Residence Guidelines, filed under seal as Exhibit 4.  The Destiny House Director, L.R., will also be available to testify at the sentencing hearing if requested by the Court.  See L.R., Destiny House Director's letter in

support of Tyricka, Carol Tidd, HFJ's Director of Operations, letter in support of Tyricka, and HFJ

member Lori Trotter's letter in support of Tyricka, filed under seal as Exhibit 5.

If allowed to reside at Destiny House in lieu of further incarceration, Tyricka will continue to

help other women heal by serving as a mentor to the new residents of Destiny House regarding her

growth and experience in the Hookers for Jesus program.

## B.   Presentence Report and Recommendation

On November 8, 2013, Tyricka entered a guilty plea to a single-count Superseding Criminal

Information charging her with transporting two victims from California to Nevada to perform labor

or services, and aiding and abetting in violation of 18 U.S.C. §§ 1590 and 2.  Superseding Criminal

Information [Dkt 184].  Tyricka comes before the Court now fully accepting responsibility for her

actions and asking the Court to follow the recommendation of the probation office sentencing her to

time served with a three year period of supervised release with the conditions recommended,

including the condition that she reside in the Destiny House program for a period of 9 to 12 months.

Tyricka asks the Court to find that the recommendation is sufficient, without being greater than

necessary, to comply with the statutory directives set forth in Title 18, United States Code, section

3553(a), and is the appropriate sentence here.

The PSR was timely disclosed to defense counsel.  The base offense level was determined to

be 22 pursuant to U.S.S.G. § 2H4.1(a).  Id. at ¶ 32.  Consistent with the plea agreement, the

probation office recommended a 3 level reduction pursuant to U.S.S.G. § 3E1.1 for timely

acceptance of responsibility.  Id. at ¶ 38.  This results in a total offense level of 19.  Id. at ¶ 39.

Tyricka has a misdemeanor criminal history record for prostitution related charges.  The

computation of Tyricka's criminal history places her in a Criminal History Category III.  Id. at ¶ 25.

The Guideline Range is 37 to 46 months.  Id. at ¶ 92.  The probation office determined that a

downward departure may be warranted pursuant to U.S.S.G. § 5K2.0(a)(2)(B) based on the

manipulation and control used by Travone Franklin to influence Tyricka's involvement in the

Law Office of Melanie Hill
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

1  instant offense.  Id. at ¶ 102.  Additionally, the probation office determined that the Court may also

2  consider the level of coercion and duress placed upon Tyricka by co-defendant Franklin and

3  consider a departure pursuant to U.S.S.G. § 5K2.12.  Id.

4       The probation office recommended that in the effort to promote a respect for the law, afford

5  adequate deterrence, and provide just punishment, and in accord with consideration of the factors set

6  forth in 18 U.S.C. § 3553, and consideration of a departure pursuant to U.S.S.G. § 5K2.0(a)(2)(B)

7  and U.S.S.G. § 5K2.12, Tyricka be sentenced to time served, followed by a three-year term of

8  supervised release.  The probation office further recommended that the following special conditions

9  be imposed to address issues of community safety and offender management to include no firearms,

10  warrantless search, substance abuse treatment, mental health counseling, and a condition that the

11  defendant reside at the Destiny House in attendance of the program Hookers for Jesus.  Id. at ¶ 107.

12  Finally, the probation office recommended that no punitive fine is recommended based on Tyricka's

13  non-existent employment history and unstable residential history, but a mandatory penalty

14  assessment of $100 is required by statute and is due immediately.  Id. at ¶ 90.

15       The Plea Agreement allows Tyricka to request a sentence below the Sentencing Guidelines

16  range as calculated in this Plea Agreement by allowing her to seek a downward adjustment pursuant

17  to 18 U.S.C. § 3553 or U.S.S.G. § 4A1.3(b)(1).  Tyricka is requesting that the Court downwardly

18  adjust her sentence pursuant to 18 U.S.C. § 3553 and U.S.S.G. § 4A1.3(b)(1) to time served for the

19  18 months she served in federal custody at the Henderson Detention Center prior to her trial in

20  February, 2013 that resulted in a mistrial from a hung jury until her release to the halfway house on

21  March 13, 2013.

22       A sentence to time served for the 18 months Tyricka spent in Henderson Detention Center

23  and the 12 months of placement at the Halfway House on home detention after Tyricka was released

24  from the Henderson Detention Center and placed on GPS monitoring (removed December 19, 2013)

25  for a total of 30 months of punishment by differing forms of "incarceration" is "sufficient, but not

26  greater than necessary" to achieve the enumerated purposes of sentencing: punishment, deterrence,

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

and rehabilitation.  Based on the achievements Tyricka made since her incarceration and release to the halfway house, and the nature and circumstances of this offense – taking into account the history and characteristics of Tyricka elicited when she testified at her trial in February, 2013 – Tyricka requests that the Court sentence her to reside at Destiny House for a period of 9 to 12 months on supervised release with the conditions that she continue mental health counseling and treatment.

Tyricka underwent a psychiatric evaluation by Dr. Norton A. Roitman, MD, DFAPA.  After reviewing Middleton's complete history, Dr. Roitman diagnosed Middleton with major depressive disorder recurrent and severe post traumatic stress disorder.  Dr. Roitman also determined that the defendant suffers from dependent personality disorder and polysubstance dependency with respect to marijuana and ecstacy.  See Dr. Roitman's Psychiatric Evaluation Report dated February 13, 2013, filed under seal as Exhibit 6.  Dr. Roitman will also be available to testify at the sentencing hearing if requested by the Court.

Tyricka no longer has a substance abuse problem and has been clean since she was arrested on September 15, 2011 with no positive drug tests throughout her last year on release, but is amenable to substance abuse treatment and counseling if the Court and the probation officer deems it appropriate.

## II.    ARGUMENT

### A. Sentencing under Booker

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines.  United States v. Booker, 125 S. Ct. 738, 756 (2005).  Given the mandatory nature of the Sentencing Guidelines, the Court found another relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the Court.  Id. at 751.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely

upon the Guidelines mandatory nature, 18 U.S.C. 3742(e), incompatible with its Sixth Amendment holding. <u>Booker</u>, 125 S. Ct. at 756.  Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory."  <u>Id.</u> at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by <u>Booker</u>,

> requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

<u>Booker</u>, 125 S. Ct. at 757.  Thus, under <u>Booker</u>, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1));
> 2) "the kinds of sentences available" (§ 3553(a)(3));
> 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6)); and,
> 4) "the need to provide restitution to any victims of the offense" (§ 3553(a)(7)).

18 U.S.C. § 3553(a).

Other statutory sections also give the district court direction in sentencing.  Under section 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the section 3553(a) factors, the

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

1    judge is required to "recognize[e] that imprisonment is *not* an appropriate means of promoting

2    correction and rehabilitation." 18 U.S.C. § 3582 (emphasis added).

3        Under section 3661, "*no limitation* shall be placed on the information concerning the

4    background, character, and conduct of [the defendant] which a court of the United States may

5    receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661

6    (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements

7    in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety

8    of factors such as the defendant's age, educational and vocational skills, mental and emotional

9    conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1. See

10   also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3,

11   2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his

12   release from prison have a very low likelihood of recidivism since recidivism reduces with age;

13   citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History

14   Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, __ F. Supp.

15   2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.)

16   (concluding that sentence below career offender guideline range was reasonable in part because of

17   defendants youth when he committed his predicate offenses – he was 17 – and noting that in Roper

18   v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in

19   moral responsibility for crime between adults and juveniles).

20       The directives of Booker and section 3553(a) make clear that courts may no longer

21   uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the

22   merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding,

23   and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many

24   of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-

25   86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed,

26   any approach which automatically gives "heavy" weight to the guideline range "comes perilously

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

close to the mandatory regime found to be constitutionally infirm in <u>Booker</u>." <u>United States v. Jaber</u>, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). <u>See also</u>, <u>United States v. Ameline</u>, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), <u>reh'g en banc granted</u>, 401 F.3d 1007 (9th Cir. 2005). Justice Scalia explains the point well in his dissent from <u>Booker</u>'s remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to be followed its opinion would surely say so.

<u>Booker</u>, 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so.  The remedial majority clearly understood that giving any special weight to the guideline range relative to the other section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the section 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.  And where the guidelines conflict with other sentencing factors set forth in section 3553(a), these statutory sentencing factors should generally trump the guidelines.   <u>See</u> <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since section 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**B. <u>Application of the Statutory Sentencing Factors to the Facts of Tyricka's Case</u>**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

### 1.  The Nature and Circumstances of the Offense

Tyricka participated in transporting the victims in this case for labor or services.  She appreciates the seriousness of the offense and the damage that has been done to the victims.  As a victim of sex trafficking herself, Tyricka is remorseful that she played any role in these victims' life with respect to their performing labor or services.  At the same time, Tyricka was not responsible recruiting or enticing the victims.  She did not seek them out.  By the time Tyricka met the victims, the damage had already been done to them by Franklin.  This does not change the seriousness of Tyricka's conduct, but it does put the nature and circumstances of the offense in a different light.

### 2.  The History and Characteristics of the Offender

Tyricka is one of five children born to her mother, Trezil Houston and father Richard Middleton who never married.  She and her siblings are actually half-siblings because they all share different fathers.  In her formative years, Tyricka did not grow up with her father, who was a crack addict and was incarcerated.  She also grew up without any other positive male-figures for that matter.  Her mother, despite being at liberty, was equally absent from Tyricka's life.  Her mother was a crack addict and would disappear for days at a time.  If she was lucky, Tyricka and her siblings would be looked after by her maternal grandparents when her mother disappeared.  See generally Dr. Roitman's report, Exhibit 6.

Other times, Tyricka and her siblings would simply be left to fend for themselves without any money, food, or idea as to when her mom would reappear.  Tyricka often times would have to figure out how to take care of herself and her younger brother, whom she has essentially raised since she was 13 years old.  The extent her mother's drug use and the resulting neglect that the children suffered was so significant that the involvement of child and family services was necessary.  Tyricka remembers moving around living at different family member's houses and also living in filth, with cockroaches running everywhere.  Id.

Worse still is that Tyricka has been sexually victimized and exploited since before she was even a teenager.  It began when Tyricka was seven years old, when she was molested by her cousin

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

Tony.  Tony, who was 15 years older than Tyricka, inserted his fingers into her vagina on several occasions.  She tried to squeeze her legs together to prevent him from doing this to her, but he did enter her.  She said she didn't know why she never told her parents about it.  Id.

When Tyricka was eight years old she remembers being with three of her girl cousins in her grandmother's house.  Some of her older boy cousins (in their teens) would take the girls into a mobile home that was in the back yard.  Tyricka recalls being molested by the boy cousins, but she is unclear whether she was sexually entered or not.  Tyricka further recalls the cousins making her give them oral sex and the boys fondled and sucked on their breasts.  This happened repeatedly over a couple of years.  Tyricka didn't tell anyone about this for reasons she cannot remember and she does not remember being threatened.  Tyricka told Dr. Roitman that she felt this was normal back then.  Id.

Tyricka lost her virginity at 11 years old, at the insistence of her older sister, Keanna Barnes.  Keanna, who was having sex regularly pressured Tyricka to follow suit.  Tyricka's initiation into sexual activity was a foursome with her sister Keanna and two men that she had never met before.  Essentially, her sister bartered away Tyricka's virginity for her own advancement.  Id.

Tyricka, under stress, started pulling out her hair a few strands at a time starting when she was 12 years old.  Tyricka started with her eye lashes and then went to her scalp.  Tyricka pulled so much that she had bald spots.  She was ashamed of them and hid them with wigs.  No one knew she was doing this.  Eventually Tyricka decided to cut her hair short because the hair pulling continued.  She told Dr. Roitman she wears her hair short now because this tendency continues.  Id.  HFJ recently paid someone to weave braided extensions into Tyricka's hair to help her with her hair pulling problem.

Moreover, between the ages of 13 and 14, Tyricka was molested by her maternal uncle, Isaiah Smith.  Tyricka had mustered the courage to disclose the abuse to her family, but rather than receiving even an ounce of support, as she had hoped for, Tyricka was basically abandoned by her family when she needed them the most.  Her family called her a liar and denied that the sexual abuse

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

happened, despite the fact that there were other known victims to Isaiah Smith's abuse.  Tyricka's Aunt Cunetta called CPS because she heard about uncle Isaiah molesting Tyricka and knew he sexually abused other girls in the family.  Tyricka was called into the principal's office and she disclosed the abuse, but when the police came to investigate, she decided to protect her uncle and denied it.  Tyricka didn't want to get her uncle into trouble and her grandparents wanted to protect their son, so they pressured her to lie.  Ultimately, Tyricka was blamed by the very people that she looked to for help for causing a further riff in the family and was kicked out.  Tyricka had to move in with her other sister, Latera Knox in Los Angeles.  Id.

It was at this lowest point in Tyricka's life at the age of 14 that co-defendant, Travone Franklin, begins to take sexual advantage of her when he was 22 for his own pleasure and then he turned her out to exploit her for his financial gain.  Tyricka was smoking marijuana and drinking. She was lonely.  When Tyricka got kicked out of her house, Franklin feigned interest in and support of her.  This is exactly what Tyricka needed at this rock bottom time in her life and Franklin exploited her weakness as most pimps exploit young, vulnerable girls looking for the love they are not getting at home.  Franklin's way of caring for Tyricka was to start a sexual relationship with her. Tyricka is a naïve 14 year old girl that believes that she is in love with Franklin and will marry him one day which is a concept that Franklin encourages to control and manipulate Tyricka.  Id.

Tyricka was subjected to abuse and exposed to promiscuity.  CPS was called again when she was 15 because, she thought, her mother was accused of allowing her to have sex with grown men and use drugs.  No abuse was substantiated, but her mother had to take classes and there was some monitorship.  Tyricka was supposed to see a psychiatrist, but her mother didn't make those arrangements.  Id.

Tyricka's confirmed this sexual relationship with Franklin when she testified in her defense at trial.  Tyricka's oldest sister, Latera Knox, who confirmed the sexual relationship between Franklin and Tyricka that began when Tyricka was 14 years old.  Latera said as far as she knows Tyricka did not see Franklin again from 14 until she was about 16 years old.  Latera said that

Tyricka began sneaking away from home and meeting Franklin at gas stations and then riding off before her family could get to her.  Latera said that Franklin began giving Tyricka ecstasy to get her high.  Latera further stated that when Tyricka was 16 and one-half years old, she was arrested for prostitution while working for Franklin.  Latera also confirmed Franklin's abuse of Tyricka and said that he would beat Tyricka and she was seen wearing excess makeup to hide black eyes and bruising.

As confirmed by her family, Tyricka was victimized, sexually trafficked, molested, and exploited by Franklin since the age of 14 when Franklin began committing statutory rape on Tyricka as a minor.  Franklin was a family friend of Tyricks'a mother, Trezil Houston, who lived two doors down from Tyricka's grandparents.  Tyricka's mother allowed Franklin to continue to allow Franklin to molest Tyricka after discovering that he was having sex with her 14 year old daughter.  Franklin brainwashed Tyricka into working for him as a prostitute to financially benefit from her working as a prostitute for him and this may have benefited Tyricka's mother who was also friend with Franklin because Franklin also sold drugs.  Tyricka thought that Franklin loved her and they would marry one day.  She described Franklin as her boyfriend before he started to beat her and make her work as a prostitute.  Tyricka left Franklin sometime when she was 14 and did not return to him until she was 16 and he put her on the streets to work for him as a prostitute when she was a minor at 16 years old.

Tyricka had tried to leave Franklin previously but he beat her up really bad and "convinced" her to stay.  While working as a prostitute for Franklin from age 16-20, Tyricka had previously attempted to leave him twice.  This abuse was described by Tyricka at trial.  Additionally abuse by Franklin was also observed and described by one of the victims in this case at trial.  Highlighted trial transcripts will be filed for the Court's review and reference at the sentencing hearing in reference to this abuse.

/ / /

/ / /

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

**3.   The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

        **a.   To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Tyricka has been punished by the 18 months of incarceration she served at Henderson Detention Center and the 12 months of placement at the Halfway House on home detention after she was released from the Henderson Detention Center and placed on GPS monitoring (removed December 19, 2013) for a total of 30 months of punishment by differing forms of "incarceration" for her responsibility in this case.   While on home detention at the halfway house, Tyricka was restricted from leaving the halfway house except for the following reasons: "employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the pretrial services office or supervising officer."   <u>See</u> PR Bond [Dkt 125].

The probation office has further recommended that Tyricka reside at Destiny House for 9 to 12 months and Destiny House will put additional restrictions on Tyricka's freedom although she is very much looking forward to living at Destiny House and continuing her rehabilitation.   As discussed in the introduction, Tyricka's incarceration in this case has promoted her respect for the law and she has proven that she can succeed on decreasing conditions of release as indicated by her success over the last 12 months in the halfway house.   Tyricka's proven success over the last 12 months on home detention at the halfway house indicate that she will be successful residing at Destiny House in lieu of further incarceration in this case.

        **b.   To afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant**

Tyricka's home detention at the halfway house has adequately deterred her from engaging in any further criminal conduct and Tyricka has not returned to the life of prostitution while living at the halfway house.   Tyricka's last year living at the halfway house without any incidents that resulted in a revocation of her pretrial release indicate that Tyricka is adequately deterred from

L<span style="font-size:smaller">AW</span> O<span style="font-size:smaller">FFICE OF</span> M<span style="font-size:smaller">ELANIE</span> H<span style="font-size:smaller">ILL</span>
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

committing crimes under Court supervision and conditions of release.  In addition to the supervision of the probation office, if Tyricka is released to Destiny House (a safe transitional home for women who want a true change in their lives away from the sex trafficking and prostitution lifestyle) she will continue to be on a form of home detention.   For example, the Destiny House Guest Expectations and Residence Guidelines provide, in part, as follows:

- No one is allowed to spend unsupervised time with unauthorized or unapproved persons outside of the Destiny House Residence.
- Physical and/or intimate relationships are not allowed during your stay at the Destiny House Residence.
- Upon move-in, all guests are required to give up their cell phone during their stay.
- Guests must sign themselves in and out upon leaving and returning to the Destiny House
- Residence for various scheduled activities.  Guests must list where they are going, the purpose of why they are going, who they will be with, the time when they leave and the time when they return.
- The Destiny House Residence will be under 24-hour video surveillance that can be viewed by Destiny House leadership, the Director, and the house mom at any time.
- Guests are expected to be up by 8:00 AM daily and prepared to participate in daily devotions when the scheduled volunteer arrives.
- Guests will be expected to be in their rooms with the T.V. off by 10:00 P.M.

See Exhibit 4 filed under seal.

### c.  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

As discussed in the Introduction, and as can be further developed through testimony at the sentencing hearing, Destiny House will provide Tyricka with the needed educational and vocational training, as well as further rehabilitation and recovery in the most effective manner.

### d.  The Sentencing Range Established by the Sentencing Commission

There are several mitigating factors with respect to Tyricka's history and characteristics that Tyricka requests the Court consider in determining that a downward adjustment from the low end of the sentencing guideline range of 37 months to 18 months of incarceration, 12 months home

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

detention at the halfway house, and 9 to 12 months of required residence at Destiny House is warranted in his case.

The probation office determined and recommended that a downward departure may be warranted pursuant to U.S.S.G. § 5K2.0(a)(2)(B) based on the manipulation and control used by Travone Franklin to influence Tyricka's involvement in the instant offense.  Id. at ¶ 102. Additionally, the probation office determined and recommended that the Court may also consider the level of coercion and duress placed upon Tyricka by co-defendant Franklin and consider a departure pursuant to U.S.S.G. § 5K2.12.  Id.  The guideline low end range of 37 does not adequately reflect Tyricka's conduct in this case in light of her pimp and co-defendant Franklin's manipulation, control, coercion, duress, and abuse or Tyricka's personal history under the circumstances described in detail in this memorandum.

### i.  U.S.S.G. § 5K2.0(a)(2)(B)

United States Sentencing Guidelines section 5K2.0(a)(2)(B) provides as follows:

UNIDENTIFIED CIRCUMSTANCES.—A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

U.S.S.G. § 5K2.0(a)(2)(B).  As recommended by the probation office, a downward departure is warranted pursuant to section 5K2.0(a)(2)(B) on the sentencing guidelines based on Franklin manipulation and control used to influence Tyricka's involvement in the instant offense.

### ii.  U.S.S.G. § 5K2.12

United States Sentencing Guidelines section 5K2.12 provides as follows:

Coercion and Duress (Policy Statement)

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. *Ordinarily coercion will be sufficiently serious to*

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

*warrant departure only when it involves a threat of physical injury*, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.  Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

U.S.S.G. § 5K2.12 (emphasis added).   As recommended by the probation office, a downward departure is warranted pursuant to section 5K2.12 of the sentencing guidelines based on the level of coercion and duress placed upon Tyricka by co-defendant Franklin.

Both victims and Tyricka testified at trial that Franklin was "in charge" and "in control" as the pimp in this case.  This is consistent with the pimp and prostitute culture that the girls work for and at the direction of their pimp.

Tyricka acknowledges her involvement and role in this case and accepts full responsibility for her actions which she will describe in her own words at her sentencing hearing.  However, the control, physical and emotional abuse, and threats Tyricka received from Franklin that she would be beaten if she did not do as she was told are all factors the Court should consider in finding that a downward departure is warranted under the circumstances of this case.  Additionally, Tyricka's testimony at trial that she was in fact beaten previously for trying to leave and disobeying Franklin are further evidence that these threats were real.

No one disputes that Tyricka was a prostitute working for a pimp (a gorilla pimp[1] pursuant to the discovery in this case).  As is typical in the prostitute pimp culture, Tyricka was acting at the direction of Franklin, her pimp, in this case under threats of actual violence.  The threats, coercion, and duress continued by letters Franklin sent to Tyricka in jail after both of them were arrested as is described below.

### iii.  U.S.S.G. § 4A1.3(b)(1)

United States Sentencing Guidelines section provides as follows:

STANDARD FOR DOWNWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially overrepresents the

---

[1] Very violent pimp.

seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1).   Four of Tyricka's six criminal history points are for prostitution related misdemeanors and the other two points are due to her being arrested on this case while she was on probation for her September 17, 2010 conviction for agreeing to engage in prostitution.   Tyricka's criminal history overrepresents the likelihood that she will commit other crimes because all of her crimes were a result of her working as a prostitute.   Tyricka has no desire whatsoever to return to the life of prostitution and has proven that she is able to avoid the life of prostitution because she did not return to prostitution while she was residing at the halfway house for the last 12 months.

Further, Tyricka is in a support group and treatment program, HFJ, for women with a mission of helping women escape and recover from the harmful effects of human sex trafficking and prostitution and helping women working as sex workers to be released from their past and healed through a personal love relationship with God.   A downward departure is therefore warranted due to the unlikelihood that Tyricka will commit other crimes now that she is no longer working as, and has no desire to return to working as, a prostitute.   This departure is further supported by the fact that Tyricka is seeking treatment and recovery as a former prostitute to stay out of the life of prostitution and has a large support group in HFJ and VBF to further her goals. See letters of support from HFJ, sealed Exhibits 3 and 5.

### e.   The Need To Avoid Unwarranted Disparities Between Co-Defendants

Although typically there is a need to avoid disparities between co-defendants, a disparity between Franklin's sentence and Tyricka's sentence is warranted in this case because Franklin's reign of terror over Tyricka didn't stop after they were both arrested.   Franklin sent hundreds of pages of letters to Tyricka while she was in jail seeking to continue to control her, threaten her, and tell her how much he loved her to continue to manipulate her to try to avoid her testifying against him.   It took nearly six months for this control over Tyricka to begin to subside so that Tyricka could start making decisions about the case for herself.

Law Office of Melanie Hill
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 · Fax: (702) 362-8505

Law Office of Melanie Hill
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

1    A number of the letters Franklin sent Tyricka for the year and a half she was incarcerated in

2  the Henderson Detention Center threatened Tyricka to scare her not to leave him or turn on him.

3  Franklin also admitted to committing statutory rape on Tyricka in 2007 when she was 16 in one of

4  the letter he sent to her in jail.  Franklin's letter stated as follows:

5        Plus I've been in love with you ever since the first time I touched you, yes and I do
         mean the first time.  In 2007, we fucked in my grannys backyard in the back house ☺
6        I think about a lot of stuff we did and been through, I will never turn my back on you
         ma, and I would love to spend the rest of my life with you.

7

8  Trial Exhibit 577, attached hereto as Exhibit 7.

9    As is apparent from reviewing the highlighted portions of the letters, Tyricka continued to be

10 victimized, exploited, and controlled by Franklin while in jail.  See generally, letters attached hetreto

11 as Exhibit 7.  Franklin is telling Tyricka he loves her one minute and will hurt her the next if she

12 leaves him.  In another letter Franklin told Tyricka "I wish I would get out of jail and you fuckin

13 with any other nigga, I'll blow your face off, and that's for real. Bitch."  Franklin then goes on to say

14 "Bitch, my heart belongs to you, I have never loved anybody more than I love you…"  Trial Exhibit

15 572, attached hereto as Exhibit 7.  Franklin's threats continue throughout the letters.  Franklin

16 further states in a letter to Tyricka that "Like I told you before, I don't want nobody else, and I will

17 not let nobody have you, either I have you or nobody will ☺ (Im not playing)."  Trial Exhibit 596,

18 attached hereto as Exhibit 7.  In another letter, Franklin states: "Tyricka that's my word. If you do

19 me wrong, I will get the last laugh...."  Trial Exhibit 590, attached hereto as Exhibit 7.  In that same

20 letter, Franklin went on to write: "I swear to God if I hear you fucking with anybody from over

21 there, I will be back in jail for knocking you off."  Id.  In another letter, Franklin states, "You

22 already know that I'm never letting you be with another man no matter what."  Trial Exhibit 589,

23 attached hereto as Exhibit 7.  Finally, in another letter sampling, Franklin states:

24       That time will go by so fast, that a nigga will be back on the streets before you know
         it. You Big! I just hope that when you do get out, you don't leave me hanging and
25       forget all about me, because there will be a problem if that happens and you should
         know that you belong to me and if you ever forget just look at your arm, KTM.  Plus

26

if any nigga see that tattoo they gone know you fuck with a pimp.  But, I'm not tripping because I got a whole bunch of faith in you. You know who you belong to....

Trial Exhibit 556, attached hereto as Exhibit 7.

These threatening letters and the abuse Tyricka suffered at the hands of Franklin support Tyricka's request and the probation office's recommendation for downward departures pursuant to U.S.S.G. § 5K2.0(a)(2)(B) and U.S.S.G. § 5K2.12 as discussed above.

### III.   CONCLUSION

Tyricka is a young woman with a long history of physical and sexual abuse throughout her childhood that continued until she was arrested in this case while suffering as a victim of sex trafficking by her pimp and co-defendant Travone Franklin.  Tyricka recognizes that she made very bad choices in engaging in the conduct that brings her before this Court and she has endured consequences for her actions for the last two and a half years that will continue throughout her life as a felon.

Tyricka respectfully submits that a sentence of time served of 18 months incarceration at the Henderson Detention Center and 12 months on home detention at the halfway house on GPS monitoring (that was recently removed in late December, 2012) with three years of supervised release with a condition that she reside at Destiny House for 9 to 12 months is sufficient, but not greater than necessary, to comply with the statutory directives set forth in Title 18, United States Code, section 3553(a).  Tyricka requests that the Court depart downward as requested in this memorandum and follow the recommendation of the probation office.

Dated this 4th day of February, 2014.

LAW OFFICE OF MELANIE HILL

/s/ Melanie A. Hill
Melanie A. Hill
9345 W. Sunset Road, Suite 100
Las Vegas, Nevada 89148
Tel:  (702) 362-8500
Fax:  (702) 362-8505
Melanie@MelanieHillLaw.com
Attorney for Defendant Tyricka Middleton

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

LAW OFFICE OF MELANIE HILL
8509 Normandy Shores Street, Las Vegas, Nevada 89131
Tel: (702) 362-8500 • Fax: (702) 362-8505

**CERTIFICATE OF SERVICE**

This certifies that the undersigned has served a copy of the foregoing **DEFENDANT TYRICKA MIDDLETON'S SENTENCING MEMORANDUM, EXHIBITS IN AID OF SENTENCING, AND NOTICE OF INTENT TO CALL WITNESSES TO DISCUSS THE DESTINY HOUSE TRANSITIONAL RESIDENCE** on the following counsel of record via the ECF system on February 5, 2014:

| | |
|---|---|
| Melanie A. Hill | Melanie@MelanieHillLaw.com, kristinsmith23@gmail.com, tom@melaniehilllaw.com |
| Monique N. Kirtley | Monique_Kirtley@fd.org, Karen_Meyer@fd.org |
| Rene Valladares | Rene_Valladares@fd.org, Karen_Brokaw@fd.org |
| Roger Yang | Roger.Yang@usdoj.gov, christie.m.sequeira@usdoj.gov, William.Foley@usdoj.gov |
| Cristina D. Silva | cristina.silva@usdoj.gov, norma.vizcarra1@usdoj.gov |
| Nadia Janjua Ahmed | nadia.ahmed@usdoj.gov, eileen.alexander@usdoj.gov, eunice.jones@usdoj.gov, sue.knight@usdoj.gov |

The undersigned also served a copy of the foregoing on Bridger Franzen with the U.S. Probation Office by email.

/s/ Melanie A. Hill
An Employee of Law Office of Melanie Hill