# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
## LAS VEGAS, NEVADA

UNITED STATES OF AMERICA,     )
                              )   CASE No. 2:11-CR-0340-PMP-CWH
              Plaintiff,      )
                              )
        vs.                   )
                              )
TYRICKA MIDDLETON,            )
                              )
              Defendant.      )   Las Vegas, Nevada
                              )   February 10, 2014
_____)   10:02:47 a.m.
And related parties and cases)

**SENTENCING AND DISPOSITION**

THE HONORABLE PHILIP M. PRO, PRESIDING
DISTRICT JUDGE OF THE U.S. DISTRICT COURT

COURT RECORDER:

HENRY ENRIQUEZ
U.S. District Court

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

APPEARANCES:


FOR THE PLAINTIFF:          ROGER YANG,
                           Assistant U.S. Attorney
                           333 Las Vegas Blvd. South, Suite 5000
                           Las Vegas, Nevada 89101
                           Roger.Yang@usdoj.gov



FOR THE DEFENDANT:         MELANIE A. HILL, Esq.
                           Law Office of Melanie Hill
                           9345 W. Sunset Road, Suite #100
                           Las Vegas, Nevada 89148
                           Melanie@MelanieHillLaw.com



ALSO PRESENT:              BRIDGER FRANZEN,
                           U.S. Probation Officer

                           SANDRA BUSTOS,
                           Pretrial Services Officer

```
1   LAS VEGAS, NEVADA                    MONDAY, FEBRUARY 10, 2014
2                 PROCEEDINGS BEGAN AT 10:02:47 A.M.
3                           *  *  *  *  *
4           THE CLERK:  All rise.
5           THE COURT:  Have a seat everybody.
6           All right, we have two matters on calendar this
7   morning.  We'll proceed with the criminal matter, United
8   States versus Tyricka Middleton first.  I do not think that
9   will take a great deal of time.  There's been a lot of work
10  done by the parties, in particular the defense in preparing
11  for this.
12          Have a seat please, everybody.
13          And I think consistent with what I've indicated at
14  prior hearings, you all understand the perspective I have
15  with regard to sentencing in this case as well, and Ms.
16  Middleton's situation.  She's made, I must say, considerable
17  progress based upon the report I have from Pretrial Services,
18  the probation report and the materials provided on behalf of
19  Ms. Middleton by the defense, by defense counsel.
20          Ms. Middleton, I want to go back to the events
21  which bring us to this point.  On, of course this case
22  started much before that date and you'd previously proceeded
23  to trial.  There was a hung jury.  And a lengthy period where
24  continued negotiations were attempted after spending many
25  months in custody.  I think 19 months in custody.  I ordered
```

1    you released and placed in residential living situation.  And

2    while you've had a few fits and starts you've done, on the

3    whole, quite well.  And I -- based on all of the materials

4    that have been submitted to me it looks like you have really

5    turned a corner in your life and are making meaningful

6    progress and I commend you for that.

7              But I want to go back and make a record of the

8    proceedings today with regard to sentencing and in doing

9    that, as noted in the presentence report on November 8th of

10   last year, you entered a plea of guilty to the charged

11   contained in a one count information, that charge being

12   trafficking with respect to peonage slavery, involuntary

13   servitude or forced labor and aiding and abetting, in

14   violation of 18, U.S. Code, Sections 1590 and (2).  At this

15   time I adjudicate you guilty of that offense.

16             And I want to remind you that except to the extent

17   you may have waived your right to do so, any appeal of

18   sentencing findings would have to be started by filing a

19   notice of appeal within 15 days of this date.  Do you

20   understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Now the Department of Probation

23   prepared a very thorough presentence report dated January 6th,

24   2014.  I don't think we have objections per se, to the

25   contents of the guideline calculation or probably the

1   recommendation which does recommend a departure and I think

2   appropriately so.  But let me make sure there are no factual

3   errors in the report.

4            Mr. Yang, are you aware of any factual mistakes in

5   the presentence report?

6            MR. YANG:  No, Your Honor.

7            THE COURT:  And, Ms. Hill, are you?

8            MS. HILL:  No, Your Honor.  And we had no

9   objections to the PSR.

10            THE COURT:  And did you read that presentence

11   report as well, Ms. Middleton?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  And did you see any mistakes in it?

14            THE DEFENDANT:  No.

15            THE COURT:  All right.  Well, the presentence

16   report chronicles the history of this case thoroughly.  Those

17   of us in the room have lived it and have far more familiarity

18   with all of those circumstances.

19            The offense level that is calculated at paragraphs

20   31 through 39 come out in an offense level 19.  A Criminal

21   History Category calculated at paragraphs 40 through 49 come

22   out at a Criminal History Category III.

23            And in a great many respects it reads like

24   something historical but it's like talking about somebody

25   that used to exist, not somebody I think that exists now,

1  which is a good thing for you.  Absent any departure that

2  would have provided for a potential range as set forth in

3  presentence report of 37 to 46 months, one to three years

4  supervised release, a fine of six to $60,000 and a mandatory

5  penalty assessment of $100.

6        The Department of Probation makes a very, again,

7  well articulated at paragraph 107, a statement as to why the

8  departure that's recommended by probation is made.  It

9  provides a couple of alternatives, recommending that --

10 considering departure under guideline section 5K2.0(a)(2)(B)

11 and guideline section 5K2.12 and seeks to suggest a sentence,

12 that you be sentenced to time served, which is the 19 months

13 you've already spent in custody.  Followed by three years of

14 supervised release and recommends certain special conditions

15 which in and of themselves do not seem  particularly --

16 particularly onerous.  Although I'll let counsel speak to

17 those.

18        My inclination is to do exactly what probation has

19 recommended.  I think something I'd, again, articulated

20 previously that a no further imprisonment is warranted.  That

21 a term of supervision is certainly warranted and really will

22 be beneficial to you.  The support mechanisms that will be

23 available to you or continue to be important to you.  But you

24 obviously have a lot of people now that are backing you up

25 and standing behind you.  The Pretrial Services report of

1  February 7, 2014, also notes the -- in the assessment the

2  progress that you have made and that you may be in a position

3  to help other people down the road in a similar situation

4  that you found yourself in previously and I hope that that's

5  correct as well.

6          So with that let me ask first, Mr. Yang, does the

7  government have a specific recommendation as to sentence

8  and/or conditions of supervision that perhaps are not

9  already encompassed in Mr. Franzen's presentence report

10 proposal?

11         MR. YANG:  Your Honor, I don't have a copy of the

12 plea agreement with me for some reason.  If I could ask the

13 Court's indulgence and ask for a copy of the plea agreement?

14         THE COURT:  Well, I've got a copy here, but --

15         MS. HILL:  I gave him a copy, Your Honor.

16         THE COURT:  Oh, you did?

17         MS. HILL:  Yeah.

18         THE COURT:  Oh, okay.

19             (Pause in the Proceedings)

20         MR. YANG:  The government is in agreement with

21 probation's recommendation and you'd recommended conditions

22 of supervised release with the exception that the government

23 understood that in entering the plea agreement she would be

24 required to register as a sex offender.

25         MR. FRANZEN:  Your Honor, if I may address that?

 1          THE COURT:  Yeah.

 2          MR. FRANZEN:  I spoke with the sex offender

 3    registry in the State of Nevada, I had spoke to a supervisor

 4    up there regarding this matter in particular in this case

 5    and the statute in which it falls under.  She is not required,

 6    by Nevada Statute, to register as a sex offender under this --

 7    under the statute.

 8          THE COURT:  And that, I understood actually at the

 9    time it was being negotiated was what -- that was the one

10    barrier and the thing -- the goal that was trying be -- be

11    achieved.  I'm not going to order her to do so.  I think that

12    would be counterproductive and, frankly, damaging to progress

13    that's being made in this individual's case.  It would be an

14    injustice.  So I won't -- won't order that and I don't think

15    the state law compels that either, but.

16          MR. YANG:  Well, the government would like to put

17    the defendant on notice that if she moves back to California

18    there is a likelihood that she may be required to register in

19    California based on the nature of the conviction.  In

20    addition the government notes at paragraph 58, page 15, the

21    government believes that that arrest and the circumstances

22    behind that arrest justify her having to register as a sex

23    offender.

24          THE COURT:  Okay.

25          MR. YANG:  And with that the government has no

1  further comments.

2          THE COURT:  Okay.  Let me go back to page 50 -- I'm

3  sorry, page 15, the prostitution conviction and contributing

4  to delinquency of a minor in December of 2010.

5          MR. YANG:  That's correct, Your Honor.

6          THE COURT:  Okay.  Well, if that conviction so

7  required her to do so in California, that already exists.

8          MR. YANG:  That was an arrest.  There is no

9  disposition.  But the circumstances behind that were the

10  reasons why -- one of the reasons why the government was

11  recommending sex offender registration.

12          THE COURT:  Okay.  All right.  All right, thank you.

13  I appreciate that.

14          Ms. Hill, let me hear from you.  And then of course

15  I'll hear from Ms. Middleton, anything she wishes to say,

16  though I think I've already previewed that I'm not going to

17  order, as a condition, that she register as a sex offender.

18  I don't think, certainly in the State of Nevada it's

19  required.  Now I can't state with knowledge what the laws of

20  every state are and may be and that can be dealt with, I

21  suppose.  But I think it would be, again, counterproductive

22  to put her in a position of having to do so.  But go ahead.

23          MS. HILL:  Your Honor, we agree.  And with respect

24  to page 15, paragraph 58, it does say "disposition unknown."

25  She has not resolved that case at all and there's no

1  indication from what we have on the record that she will be

2  convicted of that case.  This morning I provided the Court

3  with some additional supplementary materials.

4          THE COURT:  Right.

5          MS. HILL:  And she is actually working with --

6          THE COURT:  And Mr. Yang has those I take it?

7          MS. HILL:  He does, Your Honor.  I handed those to

8  him.

9          THE COURT:  And there's no objection to the

10 February 9, 2014, letter being filed under seal I take it?

11         MR. YANG:  That's fine, Your Honor.

12         THE COURT:  Okay.  That one will be filed under

13 seal, Ms. Clerk.  The other does not need to be filed under

14 seal.  The letter of February 7th does not, but the letter of

15 February 9 should be sealed.

16         Okay.

17         MS. HILL:  Yeah, that's correct, Your Honor.

18         And I just wanted to note with respect to the

19 letter from the DAs office that Ms. Middleton is a victim in

20 case that LA is prosecuting currently and we've been in

21 conversations -- I've had conversations with him about this

22 case and her need to testify in that case.  And they are

23 working with her on resolving all of her California cases

24 favorably.  So we don't anticipate that that is going to be

25 an issue either.

1          THE COURT:  Good.

2          MS. HILL:  The Court has the -- the sentencing memo

3   and I don't want to waste the Court's time going over

4   everything in detail.

5          THE COURT:  Yeah.

6          MS. HILL:  I just wanted to let the Court know who

7   came here to support Ms. Middleton.

8          THE COURT:  Yeah, I see a lot of people.

9          MS. HILL:  Just if the Court has any questions

10  about who's here from Destiny House or any questions about

11  the Destiny House program.  We are recommending that the

12  Court follow the recommendation of the probation office and

13  ask that the Court have her live at Destiny House as part of

14  her conditions of release here today on the -- on the time

15  served.

16         THE COURT:  No, I think that's an excellent

17  proposal by -- by probation and the residence for a period of

18  12 months would be, I think productive for her and hopefully

19  productive for other people as well.

20         MS. HILL:  We believe so, Your Honor.

21         Your Honor, just so I can introduce everyone who's

22  here.

23         THE COURT:  Sure.

24         MS. HILL:  On the far end is Tammy Weekly

25  [phonetic], she's gonna be one of the house moms, working at

1   the house.

2           THE COURT:  Right.

3           MS. HILL:  She'll be there over the -- the over

4   night hours, from 1:00 a.m. until 9:00 a.m.

5           Judith Eld [phonetic], who's next to her, she'll be

6   the house mom in the evenings.

7           THE COURT:  Mm-hmm.

8           MS. HILL:  Coming on at 5 o'clock and staying until

9   1:00.

10          Lori Rose, who's the director of Destiny House is

11  here.

12          Annie Lobert who's the founder of Hookers For Jesus

13  and is -- this is her house that's she's starting with the

14  assistance of everyone who's here today.

15          THE COURT:  All right.

16          MS. HILL:  And, so she will be intimately involved

17  in Tyricka's growth and rehabilitation, as well as living at

18  Destiny House.

19          And then Carol Tidd, who's the director of

20  operations for Hookers for Jesus is also here.

21          THE COURT:  All right.  Thank you.  Thank you all

22  for attending.

23          And is there anything that you client wishes to say

24  at this time?

25          MS. HILL:  Yes, Your Honor, my client would like to

1   address the Court and read a statement that she's prepared

2   for Your Honor.

3          THE COURT:  Go ahead, Ms. Middleton.

4          THE DEFENDANT:  I am very grateful that I have been

5   given an opportunity to make a difference in my life.  Also

6   to become a successful woman, and live a decent and honest

7   life.

8          I'm not happy that I have guided myself into

9   trouble with the law but it has honestly changed me for the

10   better.  I've realized that I am good person and I want to be

11   better.  I'm not living in my past anymore.  I only want to

12   focus on my future.

13          I have lots of positive and encouraging women in my

14   life now to help motivate and push me to be successful.

15          I have been learning to be obedient and respectful

16   to authority and to be honest with all others.

17          I have not been successful in getting a job yet,

18   but I passed my GED and I am proud because I had doubted

19   myself.

20          I believe that great things take time so I'm doing

21   the best I can each day to make a difference in my life.

22          I now know the type of people I should have in my

23   life and the ones I shouldn't.  Maybe I always knew but I

24   didn't want better people in my life because I didn't want or

25   know how to be a better person.  All I want in life now is to

1  be everything I never was.  And to me that is a person who

2  can be trustworthy, hardworking, disciplined, honest and

3  caring.  I want to serve others and be a voice to women who

4  have and are living the abuse I went through.  I'm going to

5  turn all my mess into a message.

6       I plan on going back to school to get a career for

7  myself.  And that helps me to know that I can accomplish

8  anything I set my mind on.  All I have to do is work hard, be

9  consistent and be dedicated.  I know that I have a lot of

10 potential, but I want to be more advanced in my life.

11      The time I have spent incarcerated really helped me

12 to see how my actions harmed the victims involved in my

13 case.  If there was a way to apologize to them now I would

14 let them know how badly I feel for the pain I may have caused

15 them.

16      I also wish to extend my apologies to this Court

17 for causing such a great deal of inconvenience by having to

18 handle everything needed to process my case.  I don't want to

19 be seen as a bad person, I want only to prove that I can do

20 great things with my life.  I never knew how to be

21 responsible with my life and the decisions I make, but I have

22 been learning.  I know that it was my responsibility as a

23 human being to know right from wrong and to make sure that I

24 continue to do right things.

25      I take full responsibility in the role I played in

 1   all this.  I just wish I would have respected the law long

 2   ago and will continue to respect the law in the future.  I

 3   want nothing more than to obey all my higher authority.  I

 4   never had people in my life that taught me how to be honest

 5   and obedient, but I do now.  And I'm grateful for the

 6   consideration the Court has shown me this far and look

 7   forward to successfully completing my remaining obligations.

 8          I want to finish my healing of my mind and spirit

 9   into blossoming into a beautiful woman.  I have been becoming

10   a person who can be trusted and believed in and that helps me

11   to know that people can change and I have changed.  It's such

12   an amazing thing to me.  I can't wait to continue my journey

13   in life.  I look forward to moving onto a better chapter in

14   my life.

15          And also I want to thank you for taking a chance

16   with me and letting me out to show that I can be productive

17   and I know that I didn't succeed in getting a job which I

18   wanted to, but I believe I had a sense of failure, that I

19   wouldn't do it right and maybe I'll be too nervous and keep

20   making mistakes so I've put myself down about it and so I

21   kinda fell off for a moment, but I knew that I didn't want to

22   be back in Court or in jail so I've moved on and did better

23   for myself and got my GED because I knew that played a big

24   part in getting a job is that's what they really require.

25   And I'm just -- I believe that I've grown a lot throughout

1  this and I'm -- I'm not thankful that it happened, but I know

2  that it pushed me to not be lazy and to want something

3  without procrastinating about it and I want a better life for

4  myself.

5          THE COURT:  All right.  Well, everybody does, Ms.

6  Middleton, and I -- I do commend you for the insight that you

7  show in your own situation now.  You have grown considerably

8  since I first encountered you in Court years ago.  You

9  obviously, and I'm not going to chronicle, the presentence

10 report does that, you had a lot of difficult situations in

11 your youth.  You were the victim of a lot of abuse.  You were

12 pushed into a life of prostitution at a very young age.  By

13 the time you arrived here, such titles as bottom bitch were

14 given to you.  I mean this was -- you know, you were moving

15 up in that hierarchy.  Mr. Franklin controlled you.  He

16 really did.  He's in prison for a long time.  He belongs in

17 prison for a long time.

18          And I think that the jury's verdict, when they

19 hung, probably reflected some real misgivings about why you

20 really were here.  And obviously the government has a

21 responsibility to prosecute cases, including those who were

22 involved, as you were, in bringing also other young people,

23 continue -- contributing to that cycle, for those two young

24 women as well.  And who knows, you know, what their life is

25 going to be like -- that maybe they're not going to be as

1  fortunate as you are in getting stopped and forced into a

2  situation where, after you thought about it, your only

3  alternative was to turn your life around but you have.

4          And I know there have been some issues, and I know

5  it's difficult and if Franklin ever calls you don't -- don't

6  answer the phone.  I mean it's just that simple.  And don't

7  succumb to those temptations that may still linger in the

8  back of your mind and focus on doing what the good people

9  here have come to support you today are trying to help you

10  accomplish.

11          And you can, you will find work.  You will turn

12  your life around and become a productive member of society

13  and that's why I think to require you to register as a sex

14  offender under any state law would be insidious, frankly.  I

15  think it would be just wrong, unjust and I certainly would do

16  whatever I could do, as the sentencing Judge here, to see to

17  that that not happen because you don't fit today that mold

18  and you should not be strapped with that moniker for the rest

19  of your life, in my judgment.

20          So with -- with that I'm going to follow the

21  recommendation of the Department of Probation and order that

22  you be sentenced to credit for time served, the 19 months you

23  had already served in custody.

24          That will be followed by the recommended three year

25  term of supervised release under the standard terms and

1  conditions.

2          I'm not gonna impose a monetary penalty, a fine.

3  You must pay the mandatory penalty assessment of $100.

4          But the -- in addition to the general conditions,

5  the following special conditions will apply.

6          First, you shall not possess or have under your

7  control or have access to any firearms, dangerous weapon or

8  explosive device.

9          Second, you will be subject to the warrantless

10  search of your residence, person, property and automobile

11  without a warrant by the Department of Probation under

12  reasonable circumstances and at reasonable times.

13          Third, you'll be required to complete and

14  participate in, successfully, substance abuse treatment

15  programming and/or cognitive based life skills programming,

16  including drug and alcohol testing at a maximum rate of 104

17  tests per year.  To the extent you can afford to do so, you

18  must pay the costs of that treatment.  I realize right now

19  that's not possible, but in the future it might be.

20          Fourth, you'll be subject to mental health

21  treatment programming.  Again, under the direction of the

22  Department of Probation and that also will require that you

23  refrain from the use of -- and possession of beer, wine,

24  liquor or other forms of intoxicants and any illegal

25  controlled substances while in such treatment.  And also that

1   you pay the cost of that if you can afford to do so.

2          Finally, and fifth, you shall reside at the Destiny

3   House or with the Destiny House program for a period of 12

4   months from this date as a condition of supervision.  I think

5   that's been a wonderful support mechanism for you in terms of

6   making sure you are stable and will continue to be stable in

7   the future.

8          And the one thing I hope you will do, in addition

9   to straightening out your own life, which is help other

10  people do the same thing.  The people that are here from

11  Destiny House are involved in that.  I don't know the stories

12  of any of them, but I am sure there are some that could tell

13  some stories and they've seen people who've made the

14  difference in the lives of other women or men who, at a young

15  age, find themselves in the position you found yourself in.

16  And, frankly, nobody can speak to those young people better

17  than somebody who's been down that road.  Some guy in a

18  black robe talking about it in a courtroom isn't gonna do any

19  good.  Attorneys aren't -- they're gonna be helpful, but

20  they're not going to be able to do it.  You really know what

21  you're talking about and you could be a real asset, a real

22  advocate and do some good.  And I hope you'll resolve

23  yourself to do that as well as just living out your life as

24  well as you can.

25          But that will be the order.

1           Mr. Franzen, did you have anything further?

2           MR. FRANZEN:  Just for clarification, Your Honor,

3   on the record is the departure to a Level 12, pursuant to

4   5K2.0 and 5K2.12?

5           THE COURT:  Yes, pursuant to both and to Level 12

6   to explain the sentencing range.

7           MR. FRANZEN:  And then I also have a copy of the

8   conditions for the defendant and if she could report to the

9   probation officer follow -- probation office following these

10  proceedings.

11          THE COURT:  That would be great.  They're right

12  across the street and you'll get set up with your probation

13  officer.

14          THE DEFENDANT:  Thank you.

15          THE COURT:  And is there anything else on behalf of

16  the government or the defense?

17          MR. YANG:  I just wanted to introduce the Court to

18  Allison Kerr, she's a Special AUSA who will prosecuting these

19  types of cases for our office.

20          THE COURT:  All right.  And it's Ms. Kerr?

21          MS. KERR:  Yes, Your Honor.

22          THE COURT:  Pleasure.  Good to have you -- good to

23  have you with us, Ms. Kerr.  Thank you.

24          MS. KERR:  Thank you.

25          THE COURT:  And anything further, Ms. Hill?

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 989-3455 - gayle@nwranscripts.com

1            MS. HILL:  Nothing further, Your Honor.  Thank you

2    very much.

3            THE COURT:  All right.  Well, thank you.

4            PROCEEDINGS CONCLUDED AT 10:27:30 A.M.

5                        *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 989-3455 - gayle@nwranscripts.com

## CERTIFICATION

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC
NEVADA DIVISION
P.O. BOX 890
NAMPA, IDAHO 83653-0890
(208) 989-3455
gayle@nwtranscripts.com**

/s/ Gayle Martin-Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Stephanie Collinsworth                          03/11/14
TRANSCRIBER                                      DATE